And we'll hear Calverton Hills Homeowners Association against the County of Stern. Right. Mr. Stern did in fact surface and he's with us. And he has not reserved rebuttal time, so you can proceed, Mr. Stern. Thank you, Your Honor. I apologize for being tardy this morning. I also think that there's one error that pervades Judge Spatz' decision to dismiss each of the three of the plaintiff's constitutional causes of action. So I think I can be relatively brief. As you're no doubt aware, the gravamen of this action is that the county defendants have arbitrarily and over assume the county's responsibility with respect to its treatment plan. And that their actions represent an unconstitutional taking and violations of both the plaintiff's equal protection and due process rights for which there is no administrative relief available. What exactly is the taking? I mean, your clients still are the owners of the properties, right? No. In fact, Your Honor, the county owns the STP and the land upon which it is located. The county accepted delivery of an easement and a bill of sale, which rendered under the terms of the 1973 recorded agreement between plaintiff's predecessors in interest and the county. That event made the county responsible for the operation and maintenance of the STP, sewage treatment plant, if you will. What is the taking? The taking is, there are two, in fact. The, give me a moment here. The, as the court below itself acknowledged the takings clause applies to situations where the government occupies land or encroaches on plaintiff's land and attempts to enforce a regulation that simply goes too far. In granting, in dismissing the plaintiff's takings claim the court found that the claim was not right.  Under the second prong of the Williamson City Test, because the plaintiff among had not sought compensation through the state's eminent domain proceedings. That have, that really have no bearing in this matter. So, was the taking the requirement that the homeowner's association could build a plant? The taking was, the taking was two pronged as the county's failure to provide sewer service despite a legal obligation to do so. Which has, I will refer to case law that this, from this court, that describes that, those interests, the interest in the delivery of utilities as property rights for that the county cannot take without due process and in fact has a further obligation to notify the event that the county proposes to do so, to terminate utilities, or in this case, the county, the utility provider. So the taking is twofold, that the county's failure to provide sewer service and the imposition of the HOA, upon the HOA of the cost to operate, maintain, and improve the SDP under threat of regulatory sanction despite the fact that it's the county's legal obligation to do that. The court, the complaint, and the evidence submitted in opposition to the county's motion to dismiss, showed the following. The county owns the SDP and the land on which it's located. The county accepted delivery of the easement and bill of sale, rendering it responsible for the operation of the SDP under the terms of the 1973 agreement, which is recorded in the county clerk's office. And that particular obligation is referenced at paragraph 19 of that agreement. The county has, since that time, used the coercive powers of the state to require the Homeowners Association to meet what are the county's legal responsibilities. Let me ask you to turn directly to Judge Spatz' concern or this positive ruling that you failed to take advantage of administrative remedies that are available to you. How do you address that? Well, your honor, I think that the court below improperly, in my estimation, relied upon the Williamson City test. This is not, in my estimation, a Williamson City case. This is analogous to the Memphis Light case. Let me put the question another way. Your clients are alleged to have violated the Suffolk County Sanitary Code, right? Am I wrong? The county had noticed my clients to appear for an, yes, for administrative, potentially- Article seven of the code. Yes. And that code contains a provision that enables you to seek a variance or a waiver of the requirements of article seven, right? Yes, your honor, of course. But that is an administrative proceeding. And I think that's a stretch to think that an administrative hearing under the auspices of the Suffolk County Department of Health is going to hear issues, is competent, or even within its jurisdiction, to resolve issues such as ownership. I mean, you're talking about, their role is to impose penalties and corrective sanctions for violations of the code. Here in the record, your clients have not availed themselves of this procedure, right? That, there's no dispute in that regard, Judge. Our contention is that there's no point to it. It would be pointless. It's an administrative proceeding, and they simply don't have the authority to resolve the issues that- Your contention is that the agreement, I think, from 1973, which was recorded, makes crystal clear where the responsibility for maintaining and operating this sewer facility is, right? That's correct. So, it seems to me that that would make for a pretty straightforward administrative proceeding. Here's the agreement, it's not our responsibility, it's their responsibility. You're talking about the, once again, I would reiterate that that's the, the role of the administrative tribunal is going to be to prescribe, to find violations of the Suffolk County Health Code, and to prescribe penalties and, I guess, corrective requirements. Once you show them the agreement, if it says what you say, that's the end of the case, isn't it? Your Honor, I just, I don't think, I'm repeating myself, and I don't intend, I don't want to. The, that is an administrative tribunal being asked to resolve a constitutional issue, and I just, I think that's well outside of their expertise and their jurisdiction. As, if, just a little more, Your Honor. The, what is important to keep in mind, in addition to the, what is the obvious obligation of the county to, under their own agreements, is that as was the case, as the Supreme Court found, with respect to the utility customers in the Memphis Light case, the condominium residents have a protected interest in their sewage treatment services. There's no allegation that a pre-deprivation hearing had been conducted at any juncture, there's no, or that notice of an avenue of redress had been provided to the HOA, as the Supreme Court had, has said, is required, and in the Memphis Light, Gas, and Water Division case. Since then, the county has made it abundantly clear that should the HOA not continue to do so, not continue to maintain, to maintain, operate, and upgrade the sewage treatment plant, they will face heavy fines and criminal sanctions that could, that are more, that are not unlikely to result in the loss of hundreds of homes. The situation becomes untenable now. The court remarks that this is not a Williamson case. Help me be sure I fully understand your position on that. Okay. The Williamson case is, the court below treated, the Williamson standard is, by its terms, applies to land use cases. This is not a land use case. This is the, what the court in Williamson, the basis for that ruling was that the court required a full record in order to, in order to, in order, for reasons of judicial economy, to prevent the, it's a ripeness standard. It's to prevent the court from hearing cases that had not yet run their course through the variance process that might correct issues such as unconstitutional takings during the course of the variance process. They might, the requirements might be relaxed. And that, there are no such procedures applicable to the case at bar. This is simply the county deciding, acting, imposing sanctions based on a, their own refusal to accept their obligations under the terms of the 73 agreement. Help me with the record here. Have your clients ever raised the issue of responsibility for the plant with the county or any of the other defendants? Well, we've certainly, have we raised- Before suing. Well, the issue was raised with the county before we went to court, sure. And what was the outcome of- We're here. We're here, obviously, judge, because it obviously was not resolved. Were you provided some process there? Did you have some kind of procedure that could have been explored? Or pursued? Actually, no, your honor. In fact, the issue arose, I think it's arisen several times over the course, there's a 40 year plus history of this sewage treatment plant. It arose, to my knowledge, in connection with the 2008, the 2007 administrative proceedings, and it has, and I've had conversations, but here we are. The situation becomes untenable now because we're at the point where the plant is now approaching the end of its useful life and requires large scale upgrades or the county is demanding that the residents of a moderate income condominium assume a cost that, I don't want to exaggerate, but it may approach $7 million. The numbers that have been thrown around are in the neighborhood of $5 to $7 million. The county correctly points out in its brief that the homeowners association has attempted to secure financing, but has been unable to do so. This is because what, it's quite likely, more than likely, that what was contemplated at the time of the 73 agreement was that the county would form a sewer district to operate the plant and float bonds. And that the sewer district would be handling the finances at this juncture that are necessary to finance the modernization of the plant. The problem here is that you have the county, which has title to the property, is now telling the, is directing the homeowner's association, which doesn't own the plant. And therefore, has nothing with which to secure the financing to, you've got to pay, you've got to raise $7 million. Thanks very much, Mr. Stern. All right, thank you, thank you, Your Honors. Mr. Capsalis. Good morning, Your Honors. Lenderjee Capsalis from the Office of the Suffolk County Attorney for the Appellees. Your Honors, the Homeowners Association has presented the proposition that the county owns this sewage treatment plant as a foregone and established conclusion. It is not. Well, Judge Spatz said this, as we've been saying, determined that this matter was not ripe. What should Mr. Stern have done, or what should he now do, in your view, rather than trouble our federal courts? Well, in or about 2016, when enforcement proceedings resumed as a result of the progressive failure of this sewage treatment plant, there was a consent order negotiated. The way the process begins is with a notice of violation. A notice of violation gives the respondent the opportunity to prepare for a hearing, to appear for a hearing, and present evidence. Rather than- Those are the plaintiffs here. Yes, that's correct. Did they appear? They did not. There was- What did they tell you was the reason for not appearing? I believe negotiations ensued before the hearing, and both sides agreed on a consent order. And in the consent order, the Homeowners Association bound itself to replace the sewage treatment plant. And from the execution of that consent order forward- And who entered the consent order? The Suffolk County Department of Health Services and the Calverton Hills Homeowners Association. And that has the force of a stipulation, as it were, in a federal proceeding, or might have? It has the force of a contract, certainly. It has the force of a stipulation. And it could subject the- So was that placed before Judge Spatz for consideration? Absolutely. It was. So why isn't the matter ripe for decision? That is, why rely on the doctrine of ripeness? What else could they have done, is what I'm asking? First of all, there is an administrative review. There's a review board within the County Department of Health Services, and there is always an- And that's what they should do. That's what they should have done. That's what they should do. And there is- And they still can do it. And there is an Article 78 proceeding available beyond the level of appeal, the administrative appeal. They executed a stipulation and they, pursuant to which, they acknowledged that they own the sewage treatment plant and undertook to upgrade. That's correct, they did. So I don't understand what would be adjudicated before the review board. Not the execution of the consent order. That would have concluded that enforcement action. And that enforcement action was concluded with the signing of that agreement. Now, that agreement was not honored by the homeowners association. Well, on Judge Parker's question, that is why, what would they then do? Go through an appellate procedure within the administrative agency, right? Not for that enforcement proceeding. That enforcement proceeding was concluded with the signing of the consent order. And- Well, they're claiming some sort of constitutional violation among other things, right? This is a stipulation that they entered into voluntarily. I mean, I understand on the merits, that's your argument. But why aren't they entitled to raise the constitutional question now before the United States District Court? Because what was before the county, just before the commencement of this lawsuit, was another enforcement proceeding. Resulting from the homeowner's association's failure to comply with the obligations that it agreed to in the earlier consent order. So your view is that they should have, at that point, pursued an appeal within the administrative agency? At that point, yes, exactly. They said what? That they didn't really sign the consent order? I don't understand what that proceeding would have consisted of. Well, we don't see that they had any ground for objection at all. But if they did have a ground for objection, there are processes for them to have pursued it. And- Assume they do what you're suggesting, and assume also that, as you're indicating, there's no merit to this putative appeal. They lose. What happens then, in your view? The Department of Health Services would be empowered to commence another enforcement action. Another enforcement. So at that point, they lose on the appeal of the enforcement action. It's then, in your view, that they're entitled to bring an Article 78 proceeding. Absolutely, I think there's no question about that. What would the subsequent enforcement action be seeking in light of the stipulation that you just described to us? In theory, the department could seek fines and penalties. In practice, what the department usually seeks is compliance. And that's where the $7 million comes in, right? Well, at the time the Homeowners Association agreed to replace the sewer treatment plant in or about 2008, the projected cost for replacement was about $1.5 million or so, but they never did act on that. And now, they are complaining before the federal courts that the cost has escalated to somewhere in the neighborhood of $7 million. And they don't acknowledge that that has occurred because of the passage of time due to their inaction. So assume for the argument that you prevail here today, in your view, they are still entitled to pursue the administrative remedy within the health department? Yes. And there's no time limitation or other procedural obstacle that you would interpose to such a procedure? In other words, if they went there, and then you came up with the argument, oops, wrong place, or some other problem. No, not at all. The department never did schedule a hearing on this latest enforcement action. So nothing has taken place. They can proceed, and you would have them proceed, and you would impose no procedural obstacle to that process. No, that's correct. That's correct, we would not. I'm sorry, help me though. I'm still somewhat confused, because what you've said is that the county and the Homeowners Association entered into a consent decree, and the Homeowners Association agreed to upgrade, if you will, the sewage facility. Yes, correct. Did they specifically acknowledge in that document owning it? Without referring to it, I couldn't say with certainty, but I believe so. And even after that, while they were developing the plans, they did go so far as to retain an engineering firm to develop plans for the new sewage treatment plant. And they did then apply to a county program to obtain funding. And in the application for that funding, they did represent that they owned the sewage treatment plant. They represented under oath that they represented the plant. And the application for funding was denied, but the denial of the application had nothing to do with the question of ownership. It was on other merits, to my understanding. And this is what brought Judge Spat to the conclusion that that ripeness was the ground that supported a dismissal for lack of subject matter jurisdiction here. Thanks very much, Mr. Kipson. Thank you, Your Honor. We reserve the decision.